UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

SANTO PROANO and ELENA DELGADO, on
behalf of themselves and others
similarly situated in the proposed
FLSA Collective Action,

               Plaintiffs,          **MEMORANDUM & ORDER**

   - against –              22-CV-6050

MELROSE HOME IMPROVEMENT CORP. and
LUIS GUALPA,

              Defendants.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiffs Santo Proano and Elena Delgado (together,
"Plaintiffs") brought this action against Melrose Home Improvement
Corp. and Luis Gualpa (together, "Defendants") pursuant to the
Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 et seq. and the
New York State Labor Law ("NYLL") § 190 et seq. Plaintiffs seek
unpaid wage and overtime pay, FLSA liquidated damages, NYLL
liquidated damages, damages for failure to provide written notice
of rate of pay, attorneys' fees and costs, and post-judgment
interest. Defendants failed to appear or otherwise defend this
action. After the Clerk of the Court entered default against
defendants pursuant to Rule 55(a) of the Federal Rules of Civil
Procedure, Plaintiffs filed the instant motion for entry of default

judgment.  For the reasons stated herein, Plaintiffs' motion for entry of a default judgment is granted in part and denied in part pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Collectively, Plaintiffs are awarded $120,322.50 in damages, $14,981.37 in pre-judgment interest, $5,597.50 in attorneys' fees, and $584.60 in costs, plus post judgment interest as prescribed in 28 U.S.C. § 1961.

<u>**BACKGROUND**</u>

The following facts are taken from Plaintiffs' Complaint, Motion for Default Judgment, supporting memorandum, and supporting declaration and affidavits.  (*See* ECF No. 1, Compl.; ECF No. 20, Mem. in Supp. of Mot. for Default J. ("Mem."); ECF No. 21, Decl. of Jason Mizrahi ("Mizrahi Decl."); ECF No. 22, Aff. of Santo Proano ("Proano Aff."); ECF No. 23, Aff. of Elena Delgado ("Delgado Aff.").)

**I.   Factual Background**

Plaintiffs allege that Melrose Home Improvement Corp. ("Melrose") is a New York corporation with its principal place of business in Elmont, New York.  (Compl. ¶ 12-13.)  It has employees engaged in commerce and an annual gross sales volume of at least $500,000.  (*Id.* ¶ 14.)  Plaintiff also alleges that Luis Gualpa ("Gualpa") has "operational control over," has an ownership interest in, and "controls significant functions of" Melrose.  (*Id.* ¶ 23.)  Both Mr. Proano and Ms. Delgado worked as manual laborers

2

for Defendants' construction company. (*Id.* ¶¶ 6–7, 9–10.) Ms. Delgado worked for Defendants from January 2020 through approximately December 2021, and Mr. Proano worked for Defendants from September 2021 through December 2021.[1] (*Id.; see also* Mizrahi Decl. Ex. A.)

According to Plaintiffs' complaint, Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of Plaintiffs' employment, and determine the rate and method of Plaintiffs' compensation. (Compl. ¶ 30.) Further, both Melrose and Mr. Gualpa "possessed substantial control over" Plaintiffs' working conditions and the policies and practices regarding Plaintiffs' employment and compensation. (*Id.* ¶ 25.) Mr. Gualpa set employees' schedules and maintained employee records. (*Id.* ¶ 20.) Plaintiffs were not required to keep track of their time and are unaware of Defendants having used sign-in sheets, punch cards, or any other time tracking methods that would have reflected the actual number of hours they worked. (Proano Aff. ¶ 11; Delgado Aff. ¶ 11.)

---

[1] The Complaint includes what appears to be an error in ¶¶ 6–7 and 9–10, as it refers to Mr. Proano as working from January 2020 through December 2021, and Ms. Delgado as working from September 2021 through December 2021. This is inconsistent with the declarations, (*see* Proano Aff. ¶ 7, Delgado Aff. ¶ 4), as well as the remainder of the complaint, (*see* Compl. ¶¶ 33, 38). The Court may overlook clear and inconsequential typographical errors in the pleadings and disregards the inconsistent portion of the complaint. *See, e.g., Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-cv-2067 (ADS), 2013 WL 4039378, at *1 n.2 (E.D.N.Y. Aug. 7, 2013) (overlooking a typographical error wherein the plaintiff inserted another entity's name in place of the defendant's name in one cause of action but used the correct name elsewhere in the pleading).

From January 1, 2020, through December 31, 2021, Ms. Delgado worked at Defendants' construction company between 55 to 72 hours per week, each week, for an average of 63.5 hours each week. (Compl. ¶ 33; *see* Mizrahi Decl. Ex. A.)  From January 1, 2020, through November 31, 2021, Defendants paid Ms. Delgado $30 per hour for all hours worked. (Compl. ¶ 34; *see* Mizrahi Decl. Ex. A.) Defendants paid Ms. Delgado no wages for her final month of employment.  (Compl. ¶ 35; *see* Mizrahi Decl. Ex. A.)

From September 1, 2021, through December 31, 2021, Mr. Proano worked at Defendants' construction company between 55 to 72 hours per week, each week, for an average of 63.5 hours each week. (Compl. ¶ 38; *see* Mizrahi Decl. Ex. A.)  From September 1, 2021, through November 31, 2021, Defendants paid Mr. Proano $15 per hour for all hours worked.  (Compl. ¶ 39; *see* Mizrahi Decl. Ex. A.) Defendants paid Mr. Proano no wages for his final month of employment.[2]  (Compl. ¶ 40; *see* Mizrahi Decl. Ex. A.)

Defendants required Plaintiffs to work in excess of forty hours per week, but never paid an overtime premium of one- and one-half-times the regular rate of pay for those hours in excess of forty.  (Compl. ¶ 41.)  Defendants also did not provide Plaintiffs wage statements in accordance with Section 195(3) of

---

[2] Paragraphs 39 and 40 of the Complaint refer to "Plaintiff Delgado" but clearly refer to Mr. Proano's work experience in light of the sub-heading of the section ("Factual Allegations Pertaining Specifically to Plaintiff Santo Proano").  As such, the Court disregards the inconsistencies as typographical errors.  *See footnote 2, supra.*

the NYLL.  (*Id.* ¶ 43.)  Finally, Defendants did not give Plaintiffs notice of their rates of pay, Defendants' construction company's regular pay day, or "such other information" required by Section 195(1) of the NYLL.  (*Id.* ¶ 44.)

## II.  Procedural Background

Plaintiffs commenced this action against Defendants on October 9, 2022.  (*See* Compl.)  The first four counts of Plaintiffs' Complaint allege violations of the FLSA's and the NYLL's minimum wage and overtime regulations.  (*See id.* ¶¶ 50–69.) The next four counts allege violations of the NYLL's spread-of-hours pay, wage notice, wage statement, and timely pay regulations. (*See id.* ¶¶ 70–84.)  Plaintiffs seek certification of this action as a FLSA collective action, declaratory relief, unpaid wages, damages, pre-judgment and post-judgment interest, attorneys' fees, and costs.  (*See id.* pp. 12–14.)

On November 21, 2022, the Clerk of Court issued a summons to each defendant at 9 Melrose Street, Elmont, NY 11003.  (ECF No. 6.) On October 20, 2022, Plaintiffs filed an affidavit stating that the summons and Complaint had been served on Melrose through the New York Secretary of State on October 17, 2022.  (ECF No. 9.) Subsequently, on November 10, 2022, Plaintiffs filed a request for a certificate of default against all Defendants, based on their failure to answer or otherwise respond to the complaint.  (ECF No. 10.)  The Clerk of Court entered a certificate of default against

Melrose on November 14, 2022, but stated that Mr. Gualpa's service had not been noted on the docket and denied the request for a certificate of default as to Mr. Gualpa.

On March 27, 2023, Magistrate Judge Ramon Reyes entered an order noting that Plaintiffs had not yet served Mr. Gualpa and ordering Plaintiffs to do so by April 10, 2023, and also ordering Plaintiffs to move for default judgment against Melrose by April 10, 2023.   On April 5, 2023, Plaintiffs filed an affidavit representing that the summons and Complaint had been served on Mr. Gualpa through personal service on a co-tenant at his dwelling, at 9 Melrose Street, Elmont, NY 11003 on November 26, 2022, and had him served by mail on December 1, 2022.  (ECF No. 13.)   On April 6, 2023, Plaintiffs filed a request for a certificate of default against Mr. Gualpa.  (ECF No. 14.)   The Clerk of Court entered a certificate of default against Mr. Gualpa on April 11, 2023.

Subsequently, on April 10, 2023, and May 30, 2023, Plaintiffs filed motions for extensions of time to move for default judgment, (ECF Nos. 15, 17), both of which were granted by Magistrate Judge Reyes.  Plaintiffs filed their motion and supporting materials on July 10, 2023, and served the Defendants with their motion papers. (*See* Mot. for Default J.; Mem.; Mizrahi Decl.; Proano Aff.; Delgado Aff.)

## LEGAL STANDARD

Pursuant to Rule 55, courts follow a two-step process to enter default judgment. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, when the defendant fails to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk of court enters the defendant's default. *See* Fed. R. Civ. P. 55(a). A court considers an entry of default against a party to be an admission of all the well-pleaded allegations in the complaint regarding liability. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Second, if the defaulting party fails to appear or move to set aside the entry of default under Rule 55(c), the opposing party may move the court to enter a default judgment to establish liability and damages. *See* Fed. R. Civ. P. 55(b)(2). Before entering a default judgment, the court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all required procedural steps in moving for a default judgment, and (3) the plaintiff's allegations establish the defendant's liability as a matter of law. *Windward Bora LLC v. Ingber*, No. 2:21-cv-3308 (KAM), 2023 WL 6385815, at *2 (E.D.N.Y. Sept. 29, 2023). The court also must find a basis for the damages specified in the default judgment. *Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 1:22-cv-5942 (NGG), 2023 WL 5703698, at *3 (E.D.N.Y. Sept. 5, 2023).

Although the court accepts as true all well-pleaded allegations in the complaint, the court must still ensure the allegations provide a basis for liability and relief, and the court has discretion to require further proof of necessary facts. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). If the unchallenged facts establish the defendant's liability, the court determines the amount of damages due. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999). The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,* 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.   Jurisdiction

The Court must assure itself of its jurisdiction. The Court may not enter a default judgment unless it has subject-matter jurisdiction over this action and personal jurisdiction over each defendant. *See Dumolo v. Dumolo*, No. 1:17-cv-7294 (KAM), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019).

### A.   Subject-Matter Jurisdiction

Federal district courts have original subject-matter jurisdiction over all civil actions "arising under" the laws of the United States. 28 U.S.C. § 1331. The FLSA, a federal statute,

creates the cause of action for the first and second counts in Plaintiffs' Complaint.  (*See* Compl. ¶¶ 50–59.)  Nothing in the record suggests that Plaintiffs' FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, or wholly insubstantial or frivolous.  *See A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022) (listing foregoing reasons why subject-matter jurisdiction may not exist even where the complaint contains claims technically arising under federal law).  Plaintiffs' Complaint thus arises under the laws of the United States, which gives the Court federal question subject-matter jurisdiction over this action.  *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court has supplemental jurisdiction over Plaintiffs' NYLL claims.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a).  Here, supplemental jurisdiction clearly extends to Plaintiffs' third and fourth claims, which seek to recover for unpaid minimum wages and overtime premiums under the NYLL, because they virtually overlap with Plaintiffs' first two claims, which seek to recover for closely related violations under the FLSA.  (*See* Compl. ¶¶ 60-69.)  Plaintiffs' fifth through eighth claims, which allege violations of the NYLL's spread-of-hours pay,

wage notice, wage statement, and timely wage pay regulations under the NYLL, (*see id.* ¶¶ 70-84), lack precise analogues in the FLSA. Still, those claims form part of the same case or controversy because "[r]esolving all of these claims requires[s] considering evidence of the hours Plaintiff[s] worked, the rate and method by which [they were] paid, the amounts [they were] paid, and the parties' records (or lack thereof) on these subjects." *See Jenkins v. Yellowstone Props., Inc.*, No. 1:17-cv-7764 (VEC), 2019 WL 4392955, at *2 (S.D.N.Y. Sept. 12, 2019) (citing *Lyndonville Sav. Bank & Tr. Co. v. Lussier,* 211 F.3d 697, 704 (2d Cir. 2000)).

The Court ultimately lacks subject-matter jurisdiction over, and dismisses without prejudice, Plaintiffs' wage notice and wage statement claims under the NYLL, (*see* Compl. ¶¶ 74-84), however, because Plaintiffs failed to allege facts to establish their standing to pursue those claims in federal court. Article III of the federal Constitution restricts federal court power to hearing "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. A "case" or "controversy" cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To have Article III standing, the plaintiff must have suffered an injury-in-fact likely caused by the defendant's allegedly unlawful conduct and redressable by a favorable court decision. *Id.* The injury must be "concrete and particularized," *id.*, which means some specific harm to the

plaintiff beyond the defendant's technical violation of a statutory mandate, *id.* at 2213.   Standing is not "dispensed in gross."   *Id.* at 2208.   Rather, the plaintiff must show standing separately for each claim he or she presses.   *Id.*

Here, Plaintiffs did not link any legally cognizable injury that they personally experienced to Defendants' failure to provide wage statements and wage notices under the NYLL.   The Complaint merely alleges that Defendants failed to comply with these statutory mandates.   (*See* Compl. ¶¶ 76, 79, 82-83.)   Mr. Proano's supporting affidavit[3] elaborates that "Defendants' failure to provide accurate wage notices and accurate wage statements denied me of my statutory right to receive true and accurate information about the nature of my employment and related compensation policies," however, it still fails to establish an injury-in-fact. (*See* Proano Aff. ¶ 15.)   Without some tangible downstream harm flowing from the statutory violations Plaintiffs cannot have suffered a concrete injury resulting from Defendants' violations of the NYLL's wage statement and wage notice requirements.   Thus, they lack Article III standing to pursue those claims in this Court.   Multiple courts in this district have reached similar results after the Supreme Court's decision in *TransUnion* clarified the requirements to establish standing, beyond bare allegations of

---

[3] Ms. Delgado's affidavit does not mention the wage notice or wage statements. (*See generally* Delgado Aff.)

statutory violations.  *See, e.g., Quieju v. La Jugeria Inc.*, No. 1:23-cv-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023); *Guthrie v. Rainbow Fencing Inc.*, No. 1:21-cv-5929 (KAM), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023); *Sevilla v. House of Salads One LLC*, 1:20-cv-6072 (PKC), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).  Thus, because Plaintiffs lack standing, the Court lacks subject matter jurisdiction over their wage notice and wage statement claims under the NYLL.

**B.   Personal Jurisdiction**

The Court finds that it has personal jurisdiction over each defendant.  Personal jurisdiction must comport with both state law and the Due Process Clause of the federal Constitution.  *Relevant Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023).  New York law authorizes personal jurisdiction over domestic corporations, N.Y. C.P.L.R. § 301, and over non-domiciliary defendants who transact business within the state, N.Y. C.P.L.R. § 302(a)(1).

The Due Process Clause is satisfied if the court has general or specific personal jurisdiction over the defendant.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *see* U.S. Const. amend. XIV, § 1.  A court has "general" personal jurisdiction over an individual defendant sued in his or her place of domicile and over a corporate defendant sued in its state of incorporation or principal place of business.  *Ford*, 141 S. Ct. at

12

1024.   A court has "specific" personal jurisdiction over a defendant that purposefully avails itself of the privilege of doing business in the forum state where the plaintiff's claim arises out of the defendant's contacts with the forum. *Id.* at 1024-25.

Melrose Home Improvement Corp. is a New York corporation with its principal place of business in Brooklyn, New York. (*See* Compl. ¶¶ 12-13.)   Thus, the Court may exercise general personal jurisdiction over Melrose in accordance with state law and the Due Process Clause. *See* N.Y. C.P.L.R. § 301; *Ford*, 141 S. Ct. at 1024. Plaintiffs do not allege Mr. Gualpa's citizenship; however, they allege that he transacted business within New York as the owner and manager of Melrose, which is the conduct that gave rise to Plaintiffs' claims against him.  (*See* Compl. ¶¶ 17-19, 22-23.) Thus, the Court may exercise specific personal jurisdiction over him.  *See* N.Y. C.P.L.R. § 302(a)(1); *Ford*, 141 S. Ct. at 1025.

## II.  Procedural Requirements

Before the court will enter a default judgment, the plaintiff must show that entry of default was appropriate, which itself requires showing that the defendant was effectively served with process. *Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summary order).   Local Rule 55.2 imposes the additional requirements that the plaintiff attach certain materials to the motion and file proof that all motion papers were mailed to the defendant.

13

**A.    Service of Process**

The Court finds that Plaintiffs properly served each defendant with the summons and complaint.  Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made.

As to Melrose, state law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the corporation.  N.Y. Bus. Corp. Law § 306(b)(1).  Here, Plaintiffs served Melrose with notice of this action by their process server delivering the summons and Complaint to Sue Zouky, an agent in the Office of the Secretary of State authorized to accept service for Melrose.  (*See* ECF No. 9.)  Thus, Plaintiffs properly served Melrose.

As to Mr. Gualpa, state law permits a party to effect service by (1) delivering the summons within the state to a person of suitable age and discretion at the dwelling place or usual place of abode of the person to be served and (2) mailing the summons to the person to be served at his or her last known residence, so long as the delivery and mailing occur within twenty days of each other.  N.Y. C.P.L.R. § 308(2).  Here, Plaintiffs served Mr. Gualpa with notice of this action by their process server delivering the summons and Complaint to Mr. Gualpa's dwelling at 9 Melrose Street, Elmont, NY 11003, and leaving those documents

14

with a co-tenant, a person of suitable age and discretion.  (*See* ECF No. 13.)  Five days later, Plaintiffs' process server mailed a copy of the summons and Complaint by first class mail to the same address.  (*Id.*)  Thus, Plaintiffs properly served Mr. Gualpa.

**B.   Entry of Default**

The Court next finds that the Clerk of Court properly entered a certificate of default against each defendant.  Because Melrose was served on October 17, 2022, (*see* ECF No. 9), it was required to answer or otherwise respond to the Complaint by November 7, 2022.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  When it failed to do so, Plaintiffs filed a request for a certificate of default and the other materials required by Local Rule 55.1.  (*See* ECF No. 10.) The Clerk of Court entered a certificate of default against Melrose on November 14, 2022.  (ECF No. 11.)

Because Mr. Gualpa was served on November 26, 2022, (*see* ECF No. 13), he was required to answer or otherwise respond to the Complaint by December 17, 2022.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  When he failed to do so, Plaintiffs filed a request for a certificate of default and the other materials required by Local Rule 55.1.  (*See* ECF No. 14.)  The Clerk of Court entered a certificate of default against Mr. Gualpa on April 11, 2023.  (ECF No. 16.)

C.    **Local Rule 55.2**

Local Rule 55.2(b) requires that a plaintiff attach to a motion for default the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment. Local Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant.

Plaintiffs' Motion for Default Judgment is supported by an affirmation that declares Melrose and Mr. Gualpa were served with all required documents at their "last known address," which was 9 Melrose Street, Elmont, NY 11003 for both Defendants. (*See* Mizrahi Decl. Ex. G.) Accordingly, Plaintiffs have met the requirements of Local Rule 55.2(c).

**III. Liability**

Having assured itself that the jurisdictional and procedural prerequisites to enter a default judgment are met, except as to Plaintiffs' claims for NYLL wage statement and wage notice violations, the Court now must assess whether Plaintiffs' well-pleaded factual allegations establish Defendants' liability as a matter of law. As a threshold matter, Plaintiffs must show an employer-employee relationship between themselves and Defendants to prevail on their FLSA and NYLL claims. *Chang v. Loui Amsterdam, Inc.*, No. 1:19-cv-3056(RER), 2022 WL 4586100, at *5 (E.D.N.Y.

16

Sept. 29, 2022). Because district courts in the Second Circuit interpret "employer" under the NYLL coextensively with the definition the FLSA uses, the Court analyzes this threshold issue based on the FLSA's definitions. *See Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372 (S.D.N.Y. 2022).

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The Second Circuit uses a four-factor test based on "economic reality" to determine whether an employer-employee relationship exists. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013). The test asks whether the defendant (1) had the power to hire and fire the plaintiff, (2) supervised and controlled the plaintiff's work schedules or conditions of employment, (3) determined the plaintiff's rate and method of payment, and (4) maintained employment records. *Id.* at 105. The court must consider the totality of the circumstances, and no single factor is dispositive. *Id.* at 106.

Here, Plaintiffs have shown that they had an employer-employee relationship with Defendants. Each plaintiff alleges that they were employed by Defendants' construction business. (Compl. ¶¶ 6-7, 9-10.) Plaintiffs allege that Defendants had the power to hire and fire employees. (*Id.* ¶¶ 20, 30.) Plaintiffs

17

further allege that Mr. Gualpa, as the construction business's owner and manager, set Plaintiffs' work schedules and that each of the Defendants controlled the conditions of Plaintiffs' employment. (*Id.* ¶¶ 20, 25, 30.) Plaintiffs also allege that each defendant determined Plaintiffs' rate and method of payment. (*Id.* ¶ 30.) Finally, Plaintiffs allege that Mr. Gualpa, as the construction business's owner and manager, maintained employment records. (*Id.* ¶ 20.) Thus, all four factors support a finding that as a matter of economic reality, each plaintiff had an employer-employee relationship with each defendant. By the same token, the Court finds that Defendants are jointly and severally liable for the FLSA and NYLL violations discussed below. *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-66 (S.D.N.Y. 2011) (finding allegations that defendant was an "owner, partner, or manager" of plaintiff's corporate employer was enough to qualify him as an FLSA and NYLL employer and to impose joint and several liability with corporate defendant).

Plaintiffs have also shown that they are not exempt from the FLSA. The FLSA does not extend minimum wage or overtime protections to an employee in a "bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a

legal one.  *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 (2d Cir. 2020).  Here, Plaintiffs allege that both Mr. Proano and Ms. Delgado worked at Defendants' construction company as "manual laborer[s]." (Compl. ¶¶ 6, 9.)  Absent additional facts, work as a manual laborer alone does not exempt Plaintiffs from the FLSA's minimum wage or overtime protections as a matter of law.

Finally, Plaintiffs have satisfied the FLSA's interstate commerce requirement.[4]  The FLSA requires that the plaintiff be either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §§ 206, 207(a). An employer is considered an "enterprise engaged in commerce" if it has an annual gross sales volume of at least $500,000 and employees who handle, sell, or otherwise work on goods or materials that have been moving in, or produced for commerce by any person. 29 U.S.C. § 203(s)(1)(A).

Here, Plaintiffs allege the statutory requirements without providing any specific examples.  (*See* Compl. ¶ 14.)  Still, based on Plaintiffs' allegations that Defendants' construction company has an annual gross sales volume of at least $500,000 and has employees "engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working

---

[4] The NYLL lacks this requirement.  *Gangadharan v. GNS Goods & Servs.*, No. 1:18-cv-7342 (KAM), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

on goods or materials that have been moved in or produced for commerce by any person," the Court can reasonably infer that at least some of the equipment, goods, materials, and supplies used by Defendants have moved or engaged in interstate or international commerce. *See Kilmchak v. Cardona, Inc.*, No. 2:09-cv-4311 (MKB), 2014 WL 3778964, at *5 (E.D.N.Y. July 31, 2014) (noting that several courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant's business notwithstanding such pleading deficiencies).

Finding these threshold requirements satisfied, the Court proceeds to consider whether Defendants' alleged conduct violated the FLSA and NYLL.

**A.   Minimum Wage**

The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works. From January 2020 through December 2021, the federal minimum wage was $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the New York City minimum wage was $15 per hour for both large and small employers, N.Y. Lab. Law § 652(a).

The plaintiff has the burden to prove that he or she was improperly compensated for the work he or she performed. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she

worked are accurate. *Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019). An employer has a non-delegable duty to maintain accurate records of its employees' hours. *Kuebel*, 643 F.3d at 363. Thus, it would be unfair to require more substantial proof when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery. *See Cabrera*, 412 F. Supp. 3d at 181. Moreover, Plaintiffs here state that they were not required to keep track of their time and that they are unaware of Defendants having used any time tracking device that would have reflected their actual hours worked, (*see* Proano Aff. ¶ 11; Delgado Aff. ¶ 11), so more precise evidence may not even exist in this case.

Here, Defendants appear to have complied with the FLSA and NYLL minimum wage mandates when they paid Mr. Proano $30 per hour and Ms. Delgado $15 per hour for all hours worked before December 1, 2021. (*See* Delgado Aff. ¶¶ 8-9; Proano Aff. ¶¶ 8-9.) Defendants fell out of compliance, however, when they failed to pay Plaintiffs at all for the month of December 2021. (*See* Delgado Aff. ¶ 9; Proano Aff. ¶ 9.) Plaintiffs allege that they worked eleven to twelve hours per day, five to six days per week, for a total of 55 to 72 hours each week in December 2021. (Compl. ¶¶ 33, 38.) As such, Defendants failed to comply with minimum wage mandates when they failed to pay both Mr. Proano and Ms. Delgado any wages for the month of December 2021. Thus, the Court finds

Defendants liable for violating the FLSA's and NYLL's minimum wage provisions.

**B.   Overtime**

The FLSA and the NYLL's implementing regulations require an employer to pay an employee an overtime premium of one and one-half times the employee's regular rate for each hour the employee works above forty each week.  29 U.S.C. § 207(a); 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4.  Like with the FLSA's and NYLL's minimum wage mandates, the Court may presume the accuracy of Plaintiffs' recollections and estimates of the hours they worked because Defendants have defaulted.  *Cabrera*, 412 F. Supp. 3d at 181.

Here, Plaintiffs allege that Defendants paid them either $15 or $30 per hour "for all hours worked" before December 1, 2021. (Delgado Aff. ¶¶ 4, 7–9; Proano Aff. ¶¶ 7–9.)  Plaintiffs also allege that Defendants failed to pay any wages for their last month of employment.  (Delgado Aff. ¶ 9; Proano Aff. ¶ 9.)  Plaintiffs explicitly deny that Defendants ever paid them the required overtime premium of one and one-half times their regular rates. (*Id.* ¶¶ 41, 57, 67.)  Thus, the Court finds Defendants liable for violating the FLSA's and NYLL's overtime provisions.

**C.   Spread-of-Hours Pay**

The NYLL's implementing regulations require an employer to pay an employee a "spread-of-hours" premium of one additional hour's pay at the basic minimum hourly rate for each workday that

22

lasts longer than ten hours.   12 N.Y.C.R.R. § 142-2.4.   Here, Plaintiffs allege that they each worked at least eleven hours per day for each day they were employed by Defendants' construction company.  (Compl. ¶¶ 33, 38.)   They further allege that Defendants paid Mr. Proano and Ms. Delgado $15 or $30 per hour, respectively, or nothing at all during this period.  (Delgado Aff. ¶¶ 7-9; Proano Aff. ¶¶ 7-9.)   They explicitly claim that Defendants never paid them the required spread-of-hours premium.  (Compl. ¶ 71.)   Thus, the Court finds Defendants liable for violating the NYLL's spread-of-hours provision.

D.   **Timeliness of Wages**

Plaintiffs also claim that because they were underpaid each week, they were accordingly not paid on a timely basis, constituting a separate underpayment warranting an award of liquidated damages in violation of Section 191 of the NYLL. Plaintiffs do not allege that they were paid less frequently than on a weekly basis but, rather, allege that they were underpaid each week.  (Compl. ¶ 83.)   Plaintiffs state they worked as "manual laborers" for Defendants' construction company, (*id.* ¶¶ 6, 9), and are "manual workers" under the NYLL, N.Y. Lab. Law § 190(4) (defining the term manual worker as a "mechanic, workingman or laborer").   Because Plaintiffs allege that they were underpaid overtime on a weekly basis prior to December 1, 2021, and not paid at all for the month of December 2021, the Court finds Defendants

23

liable for violating the NYLL's timely wage payment requirements. However, because the timely wage payment damages overlap entirely with the overtime and minimum wage violations, as discussed *infra*, no additional damages will be awarded.

## IV. Relief

Because Plaintiffs have established Defendants' liability as to Plaintiffs' minimum wage, overtime, spread-of-hours, and timely wage payment claims, the Court must determine whether Plaintiffs are entitled to the relief they request.

### A. Collective Action Certification

Plaintiffs' Complaint states that they seek to prosecute this action as an FLSA "collective action." (*See* Compl. ¶¶ 46–49, pp. 12–13.) The FLSA authorizes an employee to sue on behalf of him or herself and all other similarly situated employees. 29 U.S.C. § 216(b). To join in the action, other employees must "opt in" by written consent. *Id.* If the plaintiff makes a factual showing that he or she and the potential opt-in plaintiffs were victims of a common unlawful policy or plan, the court conditionally certifies the action as a FLSA collective action by sending notice to potential plaintiffs who may be similarly situated. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). After those plaintiffs have opted in, the court determines whether they are in fact similarly situated to the named plaintiff. *Id.*

24

Because Plaintiffs did not reiterate their collective action certification request in their Motion for Default Judgment, the Court considers the collective action abandoned. *See, e.g.*, *Galicia v. 63-68 Diner Corp.*, No. 2:13-cv-3689 (PKC), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015). Additionally, in situations where the plaintiff seeks to certify a FLSA collective action and the defendant defaults, other courts in this circuit have entered default judgments in favor of only the named plaintiffs and have left the defendants the opportunity to defend themselves against claims by future plaintiffs. *See, e.g.*, *Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 1:16-cv-4179 (KAM), 2017 WL 10845064, at *2 (E.D.N.Y. Sept. 30, 2017); *Charvac v. M & T Project Managers of N.Y., Inc.*, No. 1:12-cv-5637 (CBA), 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013). The Court will take that track here. Thus, the Court's decision applies only to Mr. Proano and Ms. Delgado and not to any of Defendants' other employees.

**B.   Damages**

The measure of damages in a FLSA or NYLL case is the amount the plaintiff should have been paid minus the amount the plaintiff was actually paid. *Ramos v. Guaba Deli Grocery Corp.*, No. 1:20-cv-4904 (PAE), 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 29, 2021). The plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, though the plaintiff is entitled to relief under whichever statute provides the greater measure of

25

damages. *Ventura v. Putnam Gardens Parking Corp.*, No. 1:20-cv-119 (JKG)(VF), 2023 WL 3603589, at *3 (S.D.N.Y. Mar. 20, 2023), *R&R adopted by* 2023 WL 3601649 (S.D.N.Y. May 23, 2023). As discussed previously, because Plaintiffs' timely wage payment claims overlap entirely with their minimum wage and overtime claims, the Court considers them to be the same injury, and does not award separate damages for timely wage payment.

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. § 260; N.Y. Lab. Law § 663(1). The plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Here, Plaintiffs repeatedly allege that Defendants' misconduct was willful, and that Defendants were not acting in good faith. (*See* Compl. ¶¶ 51-52, 58-59, 61-62, 68-69, 71-73.) Moreover, Defendants have not answered or otherwise appeared in this action, so they have forfeited their opportunity to prove good faith. *Chen v. Oceanica Chinese Rest.*, No. 1:13-cv-4623 (NGG), 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023). Thus, the Court finds Plaintiffs entitled to liquidated damages for Defendants' violations of the FLSA and NYLL.

### 1. Ms. Delgado

Under the FLSA and NYLL, Ms. Delgado should have been paid her regular rate of pay, $30 per hour, for the first 40 hours she worked each week and time and one-half pay, $45 per hour, thereafter, plus another $15 per day as a spread-of-hours premium. From January 1, 2020, through December 31, 2021, Ms. Delgado worked between 55 to 72 hours per week, every week, for an average of 63.5 hours each week for 104 weeks. (*See* Mizrahi Decl. Ex A. at 3; Delgado Aff. at ¶ 7.)  Ms. Delgado estimates that she worked five to six days per week. (Delgado Aff. at ¶ 7.)  Thus, for each of those 104 weeks, Defendants should have paid Ms. Delgado a total of at least $2,332.50, which represents ($30 per hour x 40 hours of regular time per week) + ($45 per hour x 23.5 hours of overtime per week) + ($15 per day in spread-of-hours premium x 5 days per week)[5].  Computing the total for the entire two-year period worked (104 weeks), Ms. Delgado should have been paid at least $242,580 during the relevant timeframe.

Defendants actually paid Ms. Delgado $30 per hour for each hour of work for the 99 weeks and 6 days (rounded up to 100 weeks) spanning January 1, 2020, through November 30, 2021, for a total of $190,500 ($30 per hour x 63.5 hours per week x 100 weeks).

---

[5] Ms. Delgado's calculation of pay due provided in the supporting declaration does not include the spread-of-hours premium, so the Court has calculated it assuming five days worked above 10 hours each week, based on Ms. Delgado's affirmation. (*See* Mizrahi Decl. Ex A. at 3; Delgado Aff. at ¶ 7.)

Defendants paid Ms. Delgado nothing for her last four weeks of employment, from December 1, 2021, through December 31, 2021. Adding these figures together, Defendants actually paid Ms. Delgado $190,500 during the relevant period.

Defendants are liable to Ms. Delgado in the amount of $52,080 (the difference between the $242,580 owed and $190,500 actually paid) for their minimum wage, overtime, spread-of-hours pay violations.[6] With liquidated damages, Ms. Delgado's total damages are $104,160.

### 2. Mr. Proano

Under the FLSA and NYLL, Mr. Proano should have been paid at least $15 per hour for the first 40 hours he worked each week and $22.50 per hour thereafter, plus another $15 per day as a spread-of-hours premium. From September 1, 2021, through December 31, 2021, Mr. Proano worked between 55 to 72 hours per week, every week, for an average of 63.5 hours each week for 17 weeks. (*See* Mizrahi Decl. Ex A. at 4; Proano Aff. at ¶ 7.) Mr. Proano estimates that he worked five to six days per week. (Proano Aff. at ¶ 7.) Thus, for each of those 17 weeks, Defendants should have paid Mr. Proano a total of at least $1,203.75, which represents ($15 per hour x 40 hours of regular time per week) + ($22.50 per hour

---

[6] The Court conducted this calculation independently, noting that the spreadsheet in Mr. Mizrahi's declaration does not correctly add together the underpayment to Ms. Delgado, resulting in counsel's incorrect calculation of damages. (*See* Mizrahi Decl. Ex. A. at 4.)

x 23.5 hours of overtime per week) + ($15 per day in spread-of-hours premium x 5 days per week)[7].  Computing the total for the entire 17-week period, Mr. Proano should have been paid at least $20,463.75 during the relevant timeframe.

Defendants actually paid Mr. Proano $15 per hour for each hour of work for the 12 weeks and 6 days (rounded up to 13 weeks) between September 1, 2021, through November 30, 2021, for a total of $12,382.50 ($15 per hour x 63.5 hours per week x 13 weeks). Defendants paid Mr. Proano nothing for his last four weeks of employment, from December 1, 2021, through December 31, 2021. Adding these figures together, Defendants actually paid Mr. Proano $12,382.50 during the relevant period.

Defendants are liable to Mr. Proano in the amount of $8,081.25 (the difference between the $20,463.75 owed and $12,382.50 actually paid) for their minimum wage, overtime, spread-of-hours pay violations.[8]  With liquidated damages, Mr. Proano's total damages are $16,162.50.

---

[7] Mr. Proano's calculation of pay due provided in the supporting declaration does not include the spread-of-hours premium, so the Court has calculated it assuming five days worked above 10 hours each week, based on Mr. Proano's affirmation.  (*See* Mizrahi Decl. Ex A. at 4; Proano Aff. at ¶ 7.)

[8] The Court conducted this calculation independently, noting that the spreadsheet in Mr. Mizrahi's declaration does not correctly add together the underpayment from September to November with the December 2021 amount, resulting in counsel's incorrect calculation of damages.  (*See* Mizrahi Decl. Ex. A. at 4.)

**C.    Pre-Judgment Interest**

Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48–49 (E.D.N.Y. 2015).  To avoid giving the plaintiff a windfall, however, courts award pre-judgment interest only on compensatory damages and not on any liquidated damages award.  *Id.* at 49. Courts calculate pre-judgment interest on a NYLL award at a rate of 9% per year.  N.Y. C.P.L.R. § 5004.  For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date. N.Y. C.P.L.R. § 5001(b).  Courts have discretion to determine a reasonable intermediate date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date.  *Elghourab v. Vista JFK, LLC*, No. 1:17-cv-911 (ARR), 2019 WL 2431905, at *12 (E.D.N.Y. June 11, 2019).

Here, for ease of calculation and transparency, the Court sets December 31, 2020, as the intermediate date for Ms. Delgado because that date marks the halfway point in her employment with Defendants during the relevant period.  Defendants owe Ms. Delgado daily pre-judgment interest in the amount of $12.84 (($52,080 x 0.09 annual rate) / 365 days), starting from the December 31, 2020,

30

midpoint through the date the Clerk of Court enters judgment in this case.  The number of days between December 31, 2020, and the date of entry of judgment, November 17, 2023, is 1,051. Accordingly, the prejudgment interest owed to Ms. Delgado is $13,494.84 (1,051 days x $12.84).

Similarly, the Court sets October 31, 2021, as the intermediate date for Mr. Proano because that date marks the halfway point in his employment with Defendants during the relevant period.  Defendants owe Mr. Proano daily pre-judgment interest in the amount of $1.99 (($8,081.25 x 0.09 annual rate) / 365 days), starting from the October 31, 2021, midpoint through the date the Clerk enters judgment in this case.  The number of days between October 31, 2021, and the date of entry of judgment, November 17, 2023, is 747.  Accordingly, the prejudgment interest owed to Mr. Proano is $1,486.53 (747 days x $1.99).

### D.   Attorneys' Fees and Costs

The FLSA and NYLL each authorize an award of "reasonable" attorneys' fees.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  The standard method for determining reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany and Albany Cty. Bd. Of Elections*, 522 F.3d 182, 188-90 (2d Cir. 2007).  "The

party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015).  The applicant also must provide contemporaneous records indicating "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  The court may look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York to determine the reasonableness of a fee request.  *Fermin*, 93 F. Supp. 3d at 52.

Here, Plaintiffs have provided a spreadsheet showing the number of hours that each attorney and staff member expended litigating this case along with each person's hourly rate.  (*See* Mizrahi Decl. Ex. B.)  This spreadsheet shows that associate Jason Mizrahi completed 22 hours of work on this case and that paralegal Alexis Abrego completed 1.95 hours.  The Court omits the three one-hour entries for process servers and filing fees, which are listed under Ms. Abrego's name but appear to reflect costs to the firm and not hours of work she billed at her hourly rate. Plaintiffs request hourly rates of $350 for Mr. Mizrahi and $50 for Ms. Abrego.  (Mem. at 13.)  Plaintiffs also request an hourly rate of $450 for partner Joshua Levin-Epstein, (*id.*), but their

spreadsheet does not reflect that he did any work on this case and he is not entitled to fees, (*see* Mizrahi Decl. Ex. B).

The Court calculates Plaintiffs' total fee request at $7,797.50, which represents ($350 hourly rate * 22 hours) + ($50 hourly rate x 1.95 hours). Puzzlingly, Plaintiffs' motion requests $7,797.50 "[a]pplying the percentage method," despite having spent two pages discussing fees under the "lodestar" method and attaching a spreadsheet to support the lodestar calculation. (Mem. at 12-13.) The percentage method is an alternative to the lodestar method that calculates attorneys' fees as a percentage of the plaintiff's recovery. *McDaniel v. County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010). Plaintiffs do not state what percentage of the recovery they seek in attorneys' fees and, because the amount they request is identical to the lodestar method calculation, the Court assumes that this statement was made in error and will instead apply the lodestar method.

The Court finds 23.95 hours a reasonable amount of time to spend litigating a FLSA and NYLL case resulting a default judgment in this district. *See Sevilla v. House of Salads One LLC*, 1:20-cv-6072 (PKC), 2022 WL 954740, at *13 (E.D.N.Y. Mar. 30, 2022). (collecting cases). Mr. Mizrahi's $350 hourly rate, however, marks the high end of what courts in this district generally award for work by senior associates in wage cases. *See Jones v. Pawar Bros. Corp.*, No. 1:17-cv-3018 (PKC), 2023 WL

6214213, at *8 (E.D.N.Y. Sept. 25, 2023) (describing the hourly rates of senior associates in this District as ranging from $200-$325). The Court observes that other courts in this district recently have approved Mr. Mizrahi's and Ms. Abrego's hourly rates, but Mr. Mizrahi's rate generally has been approved at $325 rather than the $350 that Plaintiffs seek in this case. *See, e.g.*, *Sims v. Crown Waste Corp.*, No. 1:22-cv-6047 (BMC), 2023 WL 363070, at *2 (E.D.N.Y. Jan. 23, 2023). Moreover, Plaintiffs' counsel made several errors that needlessly complicated the Court's resolution of an otherwise routine default judgment motion.[9] *See Gesualdi v. Stallone Testing Labs., Inc.*, No. 1:10-cv-646 (ENV), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (explaining that filing, drafting, and calculation errors that waste judicial resources may warrant a fee reduction). Thus, the Court reduces Mr. Mizrahi's hourly rate to $250 per hour and awards $5,597.50 in attorney's fees, which represents Plaintiffs' lodestar calculation with a reduced hourly rate.

The Court awards $584.60 in costs, which include process server charges of $111.30 and $71.30 plus $402 in filing fees.

---

[9] Errors included numerous typographical errors mixing up the Plaintiffs, *see supra* n.1, n.2; submitting an erroneous request for a certificate of default against Mr. Gualpa prior to noting service on the docket, *see supra* p. 6, attaching a damages spreadsheet that fails to include a spread-of-hours calculation and erroneously undercalculates damages for Plaintiffs, *see supra* n.5-8, and making an unsupported request for attorney's fees based on the percentage method, *see supra* p. 33. Attorney errors pose special problems in the default judgment context, where courts cannot rely on the adversarial process to reveal them.

*See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 198(4). Plaintiffs request the same amount, (Mem. at 14), which is supported by their documentation, (*see* Mizrahi Decl. Ex. C).

### E. Post-Judgment Interest

Plaintiffs are entitled to post-judgment interest as of right. 28 U.S.C. § 1961. Thus, post-judgment interest shall accrue from entry of judgment at the federal statutory rate until the judgment is paid in full.

### CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Default Judgment is granted in part and denied in part.

Plaintiff Delgado is entitled to the principal balance of $104,160 and pre-judgment interest at the daily rate of $12.84 from December 31, 2020, to the date of entry of judgment, November 17, 2023, totaling $13,494.84, as well as post-judgment interest at the rate set forth in 28 U.S. § 1961(a), from the date of the entry of judgment until the date of payment in full.

Plaintiff Proano is entitled to the principal balance of $16,162.50 and pre-judgment interest at the daily rate of $1.99 from October 31, 2021, to the date of entry of judgment, November 17, 2023, totaling $1,486.53, as well as post-judgment interest at the rate set forth in 28 U.S. § 1961(a), from the date of the entry of judgment until the date of payment in full.

Plaintiffs are entitled to attorneys' fees in the amount of $5,597.50 and costs in the amount of $584.60.

The Court denies Plaintiffs' request to certify this action as a FLSA collective action.

The Court dismisses without prejudice Plaintiffs' NYLL claims for wage notice and wage statement violations.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order.  Plaintiff is ordered to serve a copy of this Memorandum and Order and the Judgment on all defendants and file declarations of service for each defendant within two days after the Clerk of Court enters the Judgment.

**SO ORDERED.**

Dated:      November 17, 2023
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York